# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| DATA RESEARCH AND HANDLING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-CV-392 |
| | ) | |
| PONE VONGPHACHANH, INDIANA | ) | |
| ASSOCIATION OF REALTORS, INC., | ) | |
| UPSTATE ALLIANCE OF REALTORS, | ) | |
| INC., UPSTATE ALLIANCE ASSOCIATION | ) | |
| MULTIPLE LISTING SERVICE, INC., and | ) | |
| NATIONAL ASSOCIATION OF REALTORS | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | | |

## OPINION AND ORDER

This matter is before the Court for resolution of several pending motions, including motions to dismiss filed by all of the Defendants and the Plaintiff's motion to amend its Complaint. For the reasons discussed below, the Plaintiff's motion to file a Second Amended Complaint (ECF 41) is **GRANTED**. The Clerk of the Court is directed to file and docket the proposed Second Amended Complaint (attached as Exh. 1 to the Plaintiff's motion), together with the supplemental exhibits submitted by the Plaintiff at ECF 42 and ECF 43. The motions to dismiss–ECF 20, ECF 29, and ECF 34–all challenged the First Amended Complaint, which is no longer controlling, and therefore are **DENIED AS MOOT**.[1]

## BACKGROUND

Data Research and Handling is an Indiana corporation based in Fort Wayne that is

---

[1] Although the Court deems the motions to dismiss moot, the arguments presented in those motions, and the standard of review applicable to Fed.R.Civ.P. 12(b)(6), are incorporated into the Court's discussion regarding the motion to amend, as explained below.

"engaged in providing relocation benefit plans to employers, unions, affinity groups and membership organizations which in turn are offered to employees, as union benefits or affinity benefits." First Amended Complaint (ECF 5), p. 2. The program Data Research was attempting to launch was designed to provide financial assistance to individuals purchasing homes and was purportedly a type of Employer-Assisted Housing Benefit Plan. Data Research filed its original Complaint in state court in March of 2014 and a First Amended Complaint was filed on October 1, 2015. *Id*. Defendant National Association of Realtors, Inc., removed the case to this Court on November 16, 2016. Notice of Removal (ECF 1).[2] The First Amended Complaint is the controlling Complaint before this Court (and the one Plaintiff seeks to amend). In that First Amended Complaint, Data Research asserts state law claims against the Defendants for libel *per se*; slander *per se*; tortious interference with contract; tortious interference with a business relationship; negligent training, supervision and retention; and violations of the Indiana Fair Trade Regulations, I.C. § 24-1-1-1, *et seq*. *Id*. Data Research also asserts federal claims for violations of the Lanham Act, 15 U.S.C. § 1125 *et seq*., and violations of the Sherman Act, 15 U.S.C. § 1, *et seq*. *Id*. Data Research alleges that the Defendants engaged in coordinated efforts to damage Plaintiff's business by defaming Data Research just as it was about to launch its major marketing initiative consisting of a "substantial rollout and on-site promotion in northeast Indiana on February 27, 2014." First Amended Complaint, p. 3. According to Data Research, the Defendants ruined the planned rollout by telling others that "Plaintiff was operating an illegal down payment assistance program, and that Plaintiff was an illegal company." *Id*., pp. 3-4. Data Research claims that the Defendants communicated these assertions "to parties contracting with

---

[2] The case was actually removed here from state court once before, as discussed below.

Plaintiff, to parties in a business relationship with the Plaintiff, . . . to the general public," and even to a U.S. Congressman. *Id*. Data Research claims that the Defendants' conduct was deliberate and calculated to suppress market competition. Plaintiff's case is summarized by the following sentence from its First Amended Complaint: "The Defendants have, through a combination of acts and through conspiracy, incorporated illegal and oppressive measures to prevent an innovative business model from forming and thriving in the market, and have acted to restrain trade." *Id*., p. 6.

## APPLICABLE STANDARDS OF REVIEW

Federal Rule 15 governs amendments and provides that "[a] party may amend its pleading once as a matter of course. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(1)-(2). Pursuant to the Rule's express language, leave to amend a complaint is generally liberally granted. *Murphy v. Vill. of Hoffman Estates*, 959 F.Supp. 901, 904 (N.D.Ill. 1997). Nevertheless, the Court can deny the Plaintiff's motion to amend if it concludes that there exists "undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001); *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991). Also, "'the right to amend as a matter of course is not absolute,' and a district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss[.]'" *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (quoting *Crestview Vill. Apartments v. United States HUD*, 383 F.3d 552, 557 (7th Cir. 2004)).

If a proposed amended complaint fails to state a viable claim under the Rule 12(b)(6) standard, then amendment would be futile and the plaintiff's motion to amend must be denied. The Rule allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Stated differently, "[a] motion under Rule 12(b)(6) challenges the sufficiency of the complaint and not the merits of the suit." *Neal v. Backs*, 2016 WL 5933429, *2 (N.D.Ind. Oct. 12, 2016) (citing *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990)). In *Twombly* the Supreme Court articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption

4

that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). Finally, determining whether a complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

These applicable standards, in tandem, guide the Court in resolving the pending motions in this case.

## DISCUSSION

The Defendants oppose the Plaintiff's motion to amend, arguing that it is dilatory in nature as well as futile. *See* Response by Indiana Association of Realtors (IAR) (ECF 47); Response by Upstate Alliance, Upstate Alliance MLS, and Pone Vongphachanh (collectively referred to as "Upstate Alliance") (ECF 48); Response by National Association of Realtors (NAR) (ECF 50). The Defendants contend that Plaintiff's motion to amend, coming nearly three years after the filing of the original complaint, is an attempt to avoid directly confronting the motions to dismiss. They also insist that despite Plaintiff's contention, the proposed amended complaint does nothing to bolster Plaintiff's claims or save them from dismissal and is therefore futile.

Data Research claims in its motion to amend that its proposed Second Amended Complaint includes allegations that "overcome the arguments of Defendants supporting dismissal[,] . . . raises no new legal causes of action," and provides "greater specificity" regarding claims and jurisdictional bases. Motion to Amend, p. 2. Accordingly, Data Research

argues that the issues raised in the motions to dismiss are mooted by the purportedly fine-tuned Second Amended Complaint. *Id.*[3]

Defendant IAR devoted most of its brief in opposition to the Plaintiff's motion to amend to arguing that Plaintiff fails to state a cognizable claim against it for defamation, be it libel or slander, while only a page or so is devoted to Plaintiff's federal claims under the Lanham Act and the Sherman Act. IAR Response, generally. The opposition brief filed by Upstate Alliance doesn't argue the merits of any claim, but states that Plaintiff's proposed Second Amended Complaint is "an attempt to substitute a proposed amended complaint for a reply to the three pending Motions to Dismiss. The consequence of such action is dilatory in nature." Upstate Alliance Response, p. 3. They contend that Plaintiff's motion to amend is "an exercise in futility[]" and that "[o]ther than delaying a ruling on the three pending Motions to Dismiss, there is no reason for Plaintiff's Motion." *Id*. The NAR's brief echos the "dilatory nature" and "futility" arguments, and also challenges the facial validity (that is, the Rule 12(b)(6) sufficiency) of Plaintiff's Lanham Act and Sherman Act claims. NAR Response (ECF 50), generally.

Federal Rule of Civil Procedure 15(a) provides that if a party is not entitled to amend a

---

[3] The Court decided not to rule on the pending motions without more input from the Plaintiff, whose motion to amend was its only response to the motions to dismiss. Seeking clarification and elaboration of Plaintiff's arguments, the Court entered an order on July 20, 2017, directing Data Research to "file response briefs (or a single collective response brief) to Defendants' motions to dismiss" and permitting the Defendants to file reply briefs should they choose to do so. Pursuant to that order, Data Research filed a response brief in opposition to the motions to dismiss on August 21, 2017 (ECF 60), Defendant Indiana Association of Realtors filed a reply brief on September 5, 2017 (ECF 62) and Defendant National Association of Realtors filed its reply brief on September 27, 2017 (ECF 64). While the Defendants might lament putting in the time to file their most recent briefs, given the Court's granting of the motion to amend, the Court appreciates the efforts of counsel on both sides to accommodate the Court by filing the requested additional briefs.

pleading as a matter of course, he may do so only with the opposing party's written consent or

leave of court. District courts are afforded broad discretion to decide motions for leave to amend

pleadings. *Maxwell v. S. Bend Work Release Ctr.*, 2010 WL 3239319, at *2 (N.D. Ind. Aug. 13,

2010) (citing *Soltys v. Costello*, 520 F.3d 737, 743 (7th. Cir. 2008)). And "'[a]lthough the rule

reflects a liberal attitude towards amending pleadings, courts in their sound discretion may deny a

proposed amendment if the moving party has unduly delayed filing the motion, if the opposing

party would suffer undue prejudice, or if the pleading is futile.'" *Id*. (quoting *Soltys*, 520 F.3d at

743). Undue delay alone, however, is not a sufficient basis for denying leave to amend. *Id*. (citing

*Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004)). "Rather, to support

denial, such delay must be coupled with another reason–most commonly unfair prejudice, but

also bad faith, a dilatory motive, or when the proposed amendment would be futile." *Id*. (citations

omitted). As Judge Simon also explained in *Maxwell*:

> Generally, undue delay occurs when a motion to amend would "transform" or
> prolong the litigation unnecessarily. *Eckstein v. Balcor Film Investors*, 58 F.3d
> 1162, 1170 (7th Cir. 1995). In determining whether undue delay has occurred,
> courts consider the similarity of the factual basis for the claims in the original
> complaint to the proposed new claims, the movant's explanation for waiting to
> raise the new claims, whether the movant is attempting to introduce a new theory
> of the case, and whether granting the motion to amend will require new or
> duplicated discovery efforts.

*Maxwell*, 2010 WL 3239319, at *2 (additional internal citations omitted).

In this case the Court finds no undue delay or dilatory motive on the part of Data

Research. Recall that the Defendants support their argument by noting that the latest proposed

amended complaint comes almost "three years after the filing of the original complaint," is "an

attempt to substitute a proposed amended complaint for a reply to the three pending Motions to

Dismiss[,] [t]he consequence of [which] is dilatory in nature[,]" and that "[o]ther than delaying a ruling on the three pending Motions to Dismiss, there is no reason for Plaintiff's Motion." But these arguments ignore some important facts. First, while the Plaintiff's motion to file a Second Amended Complaint was filed almost three years after the filing of the original complaint, a fair portion of that time gap was due in part to procedural oddities that caused this case to bounce from state court to this court not once but twice. *See Data Research & Handling, Inc. v. Upstate Alliance, et al.*, No. 1:15-CV-336 (N.D. Ind. Sept. 8, 2016). This case was removed to this Court in 2015 but Judge Lozano remanded it to state court because the original complaint stated no federal claims and the First Amended Complaint, which did allege federal claims under the Sherman Act and the Lanham Act, had not been formally filed in state court prior to removal. So the case went back to state court, where the First Amended Complaint was filed, and was removed to this Court a second time since federal claims were included in the First Amended Complaint. The Upstate Alliance Defendants filed their motion to dismiss about one month after the case was removed to this Court and IAR and NAR followed suit just weeks later. In response, Data Research filed its motion to amend its complaint. So while nearly three years passed between the filing of the original complaint and the present motion to amend, that time gap was not due to a dilatory conduct on the part of Data Research.

Also, while filing a motion to amend might not be the most direct or efficient way to respond to motions to dismiss–after all, the Court directed Data Research to file a responsive brief for purposes of helping elucidate the Plaintiff's arguments–there is nothing inherently improper, let alone prejudicial or dilatory, in doing so. In addition, as Data Research points out, the proposed Second Amended Complaint does not add any new claims; instead, according to the

Plaintiff, it adds greater factual detail to support all the claims already asserted. Plaintiff's Response, p. 4. The Court concludes that the facts and circumstances of this case do not support the Defendants' argument that Data Research was dilatory or guilty of undue delay in filing its present motion to amend.

As to the Defendants' arguments that the proposed Second Amended Complaint is futile, Data Research "urges the Court to review [specific] paragraphs [of the proposed Second Amended Complaint] to gain a better understanding of the allegations[]" and then discusses dozens of those paragraphs in response to the arguments raised in the motions to dismiss and in opposition to the motion to amend. Plaintiff's Response, pp. 4-17. Since this Court would lack subject matter jurisdiction over this case if the Plaintiff fails to plead a cognizable *federal* claim–under the Lanham Act or the Sherman Act–the Court must begin by reviewing the sufficiency of the Plaintiff's allegations as to those claims. Even though the asserted federal claims are *factually* intertwined with Plaintiff's state law defamation claims, they are, of course, *legally* distinct creatures. If the Plaintiff's allegations create only mythical creatures then this case must be remanded to state court, but if they are at least plausible creatures then this Court has subject matter jurisdiction over all the claims asserted. The Court concludes, for the reasons discussed below, that the allegations in the proposed Second Amended Complaint are sufficient to state claims against all the Defendants under the Sherman Act and the Lanham Act and to vest this Court with subject matter jurisdiction.

**I. Sherman Act claim.**

Data Research alleges in its First Amended Complaint that the "Defendants have violated provisions of the Sherman Act (15 [U.S.C.] § 1, et. seq.), entitling Plaintiff to relief under the

Act. First Amended Complaint, p. 10. The Defendants violated the Sherman Act, Plaintiff

alleges, when they engaged in "a conscious commitment to a common scheme designed to

achieve an unlawful objective that constitutes a contract, combination or conspiracy[.]" *Id*. This

alleged conspiracy on the part of the Defendants had an "unlawful objective . . . to impose

unreasonable restraints of trade in state and local real estate markets in which Plaintiff was

operating[]" and was calculated to "deprive[] Plaintiff of its ability to engage in free enterprise,

and harmed and deprived the market generally of free enterprise." *Id*.

The Defendants argue that neither the Plaintiff's present Complaint nor its proposed

Second Amended Complaint present sufficient allegations to support a Sherman Act claim. The

Upstate Alliance Defendants contend that the Plaintiff's federal claims (both in the controlling

Complaint and the proposed Second Amended Complaint) are based on "mere allegations" that

"will not support a claim of violations of . . . the Sherman Act . . . or . . . the Lanham Act."

Upstate Alliance Motion to Dismiss (ECF 20), p. 1. Defendant IAR also contends that Plaintiff's

allegations "do[] not support a determination of violation of . . . the Sherman Act . . . or . . . the

Lanham Act[]" because "Plaintiff's Complaint in that regard is again devoid of specifics and

consists of mere general allegations." IAR Motion to Dismiss (ECF 29), pp. 1-2. Defendant NAR

presses this same argument in its brief in opposition to the Plaintiff's motion to amend and in its

reply brief in support of its motion to dismiss, contending that "[t]he Plaintiff's . . . Proposed

Second Amended Complaint[] is filled with the same labels, broad conclusory allegations, and

formulaic recitals lumping together all Defendants that make its original Amended Complaint

insufficient[.]" NAR Reply Brief (ECF 64), p. 2.

Data Research responds by arguing that "the Second Amended Complaint identifies

specific individuals involved, the actions of those parties, the times those actions took place and the harm that those parties intended, and inflicted, upon the Plaintiff. Defendants have been put on adequate notice of the nature of the wrongdoing alleged." Plaintiff's Response (ECF 60), p. 4. Data Research insists "that all of the requirements of proper pleading . . . have been met with the Second Amended Complaint. Specifically, Plaintiff's Proposed Second Amended Complaint contains a long recitation of activities reflecting wrongdoing by the Defendants." *Id.* Accordingly, argues Data Research, its proposed Second Amended Complaint meets the requisite pleading standard and the Plaintiff should be allowed to proceed with its claims (both state and federal).

Section 1 of the Sherman Act provides that "'[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.'" *Bloyer v. St. Clair Cty. Illinois*, 2016 WL 6804471, at *3 (S.D. Ill. Nov. 17, 2016) (quoting 15 U.S.C. § 1). "To plead a violation of § 1 of the Sherman Act, a plaintiff must plead: '(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in [a] relevant market; and (3) an accompanying injury.'" *Id.* (quoting *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012)).

The district court in *Bloyer* also set out the pleading requirements of a § 1 claim in the context of a motion to dismiss. The court explained that "[p]roof of an explicit agreement is not required to plead a Sherman Act antitrust conspiracy claim. *United States v. General Motors Corp.*, 384 U.S. 127, 142-43 (2010). Rather, a Section 1 claim of conspiracy 'requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The court also explained that

"[a]s to the second requirement–an unreasonable restraint of trade in a relevant market resulting from the conspiracy–Plaintiffs must allege a cognizable market on which Defendants' actions could have had anticompetitive effects. *Agnew*, 683 F.3d at 337-338. . . . Unless it is inconceivable that Plaintiffs could prove a set of facts supporting the market definition alleged, [their Sherman Act claim] should not be dismissed. *MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc*., 62 F.3d 967, 977 (7th Cir. 1995)[.]" *Id*.

The Plaintiff's proposed Second Amended Complaint includes the following allegations as to its Sherman Act claim, which Data Research discusses in its recently filed brief:

1) The Upstate Alliance Defendants "circulated newsletters to [their] members and to the general consuming public that Plaintiff's program was indeed linked to illegal seller funded down payment assistance programs." Proposed Second Amended Complaint, ¶ 64;

2) The Upstate Alliance Defendants "sought the assistance of NAR as early as March of 2011, in an effort to discredit Plaintiff, and mislead consumers into believing that Plaintiff was a seller funded down payment assistance (SFDPA) program. Defendants, and specifically Pone (as agent of [Upstate Alliance] and Holly Moskerintz (as agent of NAR), and other agents of these defendants, looked into possible HUD and FHA violations by the Plaintiff." *Id*., ¶ 65;

3) "NAR, through their agents and employees, used their contacts with the Department of Housing and Urban Development to provide HUD with false information and to launch an investigation of the Plaintiff . . . . In 2011, HUD initiated an investigation of Plaintiff in Indiana, at the behest and prompting of NAR, IAR, [Upstate Alliance], Moskerintz, Vongphachanh or each of them." *Id*., ¶¶ 71-72;

4) "The HUD contact with Plaintiff's network providers caused a mass exodus of these

providers, including at least five major banks and mortgage lenders, and all of their branches, more than 100 real estate network providers (including realtors and real estate agents), more than five title companies, and at least five major builders." *Id*., ¶ 74.

5) "[Upstate Alliance] and NAR, in a calculated and collusive manner, again in 2014, continued their campaign to damage the Plaintiff and to deny consumers access to their competing service." *Id*., ¶ 82.

6) "As part of the plan to scheme to damage plaintiff, Ms. Moskerintz, as agent of NAR, on or before February 20, 2014, consulted with Sarah C. Young, another agent or employee of NAR regarding further additional investigation into the dealings of the Plaintiff. Ms. Moskerintz did this with full knowledge that NAR's counsel had previously informed her that Plaintiff 'isn't doing anything legally wrong.' In a[n] email transmission to Ms. Young on [that] same date, Moskerintz refers to Plaintiff representative, Kim Henry, as 'very deceptive and manipulative.'" *Id*., ¶ 83.

7) On February 24, 2014, Upstate Alliance and NAR conducted "a conference call with HUD, again trying to discredit Plaintiff, and to promote legal and enforcement action against Plaintiff." *Id*., ¶ 86;

8) "On March 4, 2014, and at the behest of Vongphachanh and Moskerintz, Sarah C. Young published an article to post on NAR's official website, discussing seller assisted down payments. . . . This article was written specifically for use to attack the Plaintiff, even though Plaintiff is not specifically identified in the article. . . . The consuming public, who directed questions or concerns to the Defendants about the Plaintiff, were directed to this article which gave a clear perception that Plaintiff was operating an illegal seller assisted down payment plan, which it was

13

not." *Id.*, ¶¶ 88-89;

9) "The Defendants, through acts of libel and slander, maligned and defamed the Plaintiff to a sitting member of the United States House of Representatives, a sitting member of the Allen County Council, to parties contracting with Plaintiff, to parties in a business relationship with the Plaintiff, and to the general public, and maliciously and without justification threatened to associate a Congressman and a Councilman with criminal activity if either decided to show support for the work of the Plaintiff. . . . Plaintiff believes at least two substantial potential contracts, in which Plaintiff invested substantial time and money, were lost as a direct result of the false accusations of criminal activity which Defendants disseminated to these potential customers." *Id.*, ¶¶ 91, 93;

10) "Since the filing of the Plaintiff's original complaint, Plaintiff has learned that in May of 2011, IAR published a defamatory letter in its newsletter, authored by its staff counsel, in which IAR's counsel directly mentions the Plaintiff's company, and casts doubt as to the propriety of the services being offered by the Plaintiff, identifies laws which Plaintiff is likely violating and disparages Plaintiff to IAR members." *Id.*, ¶ 99;

11) "The actions of the Defendants, and each of them, resulted in driving Plaintiff out of business. . . . Defendants['] orchestrated activity against Plaintiff was intentionally covered up in order deflect any appearance of wrongdoing. . . . The Defendants took actions against Plaintiff for the purpose of unfairly and illegally protecting themselves and their members from outside competition." *Id.*, ¶¶ 104-106;

12) "The Defendants['] actions in disparaging Plaintiff, and implementing policies to prevent Plaintiff from entering into the market, amount to a restraint of competition. . . . The blocking of

Plaintiff from entering into the market and/or driving Plaintiff out of business is fundamentally anti-competitive and harmful to the consuming public. . . . The Defendants' actions include false and misleading statements which were designed to prevent Plaintiff from providing a critical service to the consuming public and therefore maintaining an exclusive non-competitive environment for their benefit. . . . The Defendants have through a combination of acts and by conspiracy, incorporated illegal and suppressive measures to prevent an innovative business model from forming and thriving in the market, and have acted to restrain trade." *Id.*, ¶¶ 113, 115, 117-118.

Data Research points to these allegations and others in the proposed Second Amended Complaint and discusses them in detail in its brief. Plaintiff's Response, pp. 5-16. Notwithstanding these assertions and allegations, the Defendants continue to insist that the Plaintiff's motion to amend should be denied on the basis of futility. The Defendants' argument that the Plaintiff's Sherman Act claim should be dismissed because it is too vague and conclusory to pass muster under the Rule 12(b)(6) standard (or the *Iqbal/Twombly* standard, if one prefers) is not a winning one at this point in the litigation. As stated, most of the Defendants don't go into great detail in their motions to dismiss, resting largely on the general argument that the Plaintiff's claims are too vague and conclusory. The NAR, however, submitted a 45-page memorandum in support of its motion to dismiss, which does present a more detailed argument. The NAR begins its Rule 12(b)(6) argument by agreeing with the other Defendants that "all of the allegations in the Amended Complaint concerning alleged Sherman Act violations . . . are purely conclusory or formulaic recitations of some of the elements of a cause of action . . ." and that the complaint "contains no factual allegations to support those naked legal conclusions."

NAR Memorandum in Support of Motion to Dismiss (ECF 36), p. 18. The NAR then dives deep

into the weeds when it comes to the specific elements of a Section 1 claim to illustrate its

argument. For example, the NAR submits the following argument:

> By way of example, nowhere does the Amended Complaint even identify the
> relevant product, service, and geographic market in which the Defendants are
> conclusorily [sic] alleged to have restrained competition. Likewise, the Amended
> Complaint is completely devoid of any allegation of the Defendants' market
> power in that (undefined) relevant market. The Amended Complaint is also
> devoid of any factual allegations concerning an unlawful agreement among the
> Defendants. While the Amended Complaint does attempt to alleged injury to the
> Plaintiff, nowhere does the Amended Complaint factually allege any antitrust
> injury to the (undefined) relevant market.

*Id.*, pp. 26-27. The NAR argues that the Plaintiff has failed to allege facts to support these

necessary elements and so its Sherman Act claim does not meet the Rule 12 pleading standard,

which in turn would render futile the proposed Second Amended Complaint. The NAR attempts

to sharpen the point on its argument by stating as follows:

> The Amended Complaint in the instant case does not contain any factual
> allegations to "nudge [the Plaintiff's] claims across the line from conceivable to
> plausible." . . . It does not and cannot truthfully allege any facts showing that the
> Defendants imposed any restraints on trade, such as boycotts or other coercive
> measures that prevented customers or others from dealing with the Plaintiff or
> prevented the Plaintiff from selling its services to any willing buyer. . . . It does
> not even allege any motivation between or among any of the Defendants to
> conspire against the Plaintiff. . . . [N]o apparent benefit or detriment exists for any
> Defendant whether the Plaintiff fails or succeeds in it[s] business. There is no
> motivation for any of the Defendants to conspire against the Plaintiff[]" and so
> "[t]he Amended Complaint simply fails on its face to state a claim under the
> Sherman Act[.]"

*Id.*, p. 28. The NAR summarizes its argument by claiming that "[t]he real gist of the antitrust

claim in the Amended Complaint is that the Defendants joined together in 'criticizing' the

Plaintiff and its service." *Id*. NAR contends that "such joint criticism is not enough to establish

an antitrust violation even if it could be proven.[.]" *Id.* (citing *Schacher v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989)) (mere criticism of a competitor's product or service does not constitute unreasonable restraint of trade so as to support Sherman Act claim). So, argues the NAR, since the Plaintiff hasn't made a showing that the Defendants were "motivated" to harm the Plaintiff's business and because their conduct amounted to nothing more than "criticism" of the Plaintiff's business plan, no claim under the Sherman Act can survive.

The problem for the Defendants is that while they claim the Plaintiff's allegations are too conclusory to support a Sherman Act claim, they support their argument with legal conclusions, or at the least legal assumptions of their own. And all of the Defendants' arguments ignore or gloss over many of the Plaintiff's allegations. The Defendants are correct that the Plaintiff has some "splainin" to do when it comes to *proving* its Sherman Act claim, but at this juncture the Plaintiff's allegations do not have to *prove* the elements of a cause of action in order to survive a Rule 12(b)(6) motion to dismiss. The Defendants' arguments, especially those presented by the NAR, purport to attack the sufficiency of the Plaintiff's proposed Second Amended Complaint under the Rule 12(b)(6) standard, but they are more akin to summary judgment arguments in disguise. Put another way, the Defendants' arguments cross the line into challenging the merits of the claims. But as stated above, "[a] motion under Rule 12(b)(6) challenges the sufficiency of the complaint and not the merits of the suit." *Neal v. Backs*, 2016 WL 5933429 at *2. The Defendants' arguments (again, especially the NAR's) seek to impose a higher burden on the Plaintiff , whether intentionally or not, than is required under Rule 12. But for present purposes, the Court must keep its eye on the ball–and the ball here is an easy one to spot: does the Plaintiff

plead "enough facts to state a claim to relief that is plausible on its face[?]" *Hecker v. Deere &*
*Co.*, 556 F.3d at 580. With respect to the Sherman Act claim, the Court concludes the answer is
yes.

The NAR's futility argument goes well beyond the arguments put forth by the other
Defendants. In fact, it picks so much meat off the bones of the Plaintiff's present and proposed
complaints that it appears at first glance there is nothing left. But again, whether intentional or
not, the NAR's briefs devolve into challenging the merits of the Plaintiff's claims, which is not
what they should do. This is a peril parties face when they attempt to leave no argument unturned
in their briefs–they end up in the deep water wherein dwell the merits. The Court concludes that
the Plaintiff's detailed allegations in the proposed Second Amended Complaint state a plausible
Sherman Act claim against all the Defendants and therefore the Plaintiff's motion to amend
should not be denied on the basis of futility.

**II. Lanham Act claim.**

Plaintiff alleges in its First Amended Complaint that the "Defendants have violated
provisions of the Lanham Act § 43(a) (15 [U.S.C.] § 1125), entitling Plaintiff to relief under the
Act." First Amended Complaint, p. 9. The Defendants did so, Plaintiff alleges, when they "made
false and misleading misrepresentations of fact in oral and published statements to the public and
to member real estate brokers." *Id*. Plaintiff further claims that "[t]he Defendants placed false or
misleading statements in interstate commerce of the United States[]" and that "Plaintiff has been
injured as a result of Defendants' misrepresentations which directly diverted sales or potential
sales of service Plaintiff provided to the consuming public[.]" *Id*.

Section 43 of the Lanham Act "imposes civil liability on any person who 'uses in

commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.' 15 U.S.C. § 1125(a)(1). As the Court held this Term, the private remedy may be invoked only by those who 'allege an injury to a commercial interest in reputation or sales.' . . . This principle reflects the Lanham Act's purpose of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. —, 134 S. Ct. 2228, 2234, (2014) (internal citation omitted).

To plead a claim under § 43 that survives a motion to dismiss, "'a plaintiff must show that the defendant made a material false statement of fact in a commercial advertisement and that the false statement deceived or had the tendency to deceive a substantial segment of its audience.'" *Toddy Gear, Inc. v. Navarre Corp.*, 2014 WL 4271631, at *2 (N.D. Ill. Aug. 26, 2014) (quoting *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007)).

The Defendants again argue that Plaintiff's allegations are too vague and conclusory to state a claim under the Lanham Act (again, in the present Complaint or the proposed amended one). In addition, they raise other issues that they contend warrant dismissal of the Plaintiff's current complaint and/or denial of the Plaintiff's motion to amend due to futility. The Court disagrees on both counts, finding the allegations in the proposed Second Amended Complaint, as presented in part above, sufficient to state a plausible Lanham Act claim against all Defendants.

One of the NAR's arguments is that the proposed amended complaint fails to state a plausible Lanham Act claim because it "does not allege or even hint at any indicia of commercial

advertising or promotion by NAR. . . . The only specific act alleged to have been committed by

NAR was to 'provide HUD with [unspecified] false information [which caused HUD] to launch

an investigation of the Plaintiff,' and 'fail[ing] to inform *other Defendants*' after learning that

HUD saw no basis for action against the Plaintiff.' . . . That can hardly be characterized as

commercial advertising or promotion by NAR." NAR Brief in Opposition to Motion to Amend

(ECF 50), p. 5. In other words, the Plaintiff's proposed amended complaint is futile because the

allegations made against NAR do not establish that NAR made "a material false statement of fact

in a commercial advertisement," which is an element that a plaintiff must prove in order to

prevail on a Lanham Act claim. But the Plaintiff does allege that the NAR conspired with the

other Defendants to disseminate allegedly false statements about Data Research in public forums

(such as websites) that were directed at both real estate professionals and organizations as well as

home buyers, with the intended goal to convince those viewers and readers that the Plaintiff's

business plan was suspect. A more fully developed evidentiary record might very well confirm

the NAR's argument that it was never involved in disseminating a misleading commercial

advertisement so as to be liable under the Lanham Act, but for now the Plaintiff has adequately

pleaded such a claim by presenting factual assertions (many of which are set forth above) that,

when taken as true, state a plausible Lanham Act claim against NAR and the other Defendants.

As the express language of the statute states, the Lanham Act imposes civil liability on a person

or entity who in the course of commerce "misrepresents the nature, characteristics, [or] qualities .

. . of . . . another person's goods, services, or commercial activities.' 15 U.S.C. § 1125(a)(1). The

Court determines that the Plaintiff's allegations state a plausible claim for violation of the

Lanham Act under the Rule 12(b)(6) standard and, consequently, the motion to amend is not

futile as to that claim.

### III. State law claims.

Given the Court's conclusion that the proposed Second Amended Complaint states plausible claims under the Sherman Act and the Lanham Act, thereby conferring subject matter jurisdiction in this Court, and that the Plaintiff's motion to amend is not dilatory or futile and will be granted, the Court retains jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The IAR is the only Defendant to challenge any of the Plaintiff's state law claims, and the only claims it challenges are the Plaintiff's defamation claims.[4]

In its brief in opposition to the motion to amend, the IAR argues that Data Research "fail[s] to state a claim for which relief can be granted on the libel and slander counts." IAR Response (ECF 47), p. 2. The IAR's argument is that the proposed Second Amended Complaint, like the current First Amended Complaint, "provides no evidence whatsoever of any . . . involvement of the IAR" in making any defamatory communications about Data Research. *Id.*, p. 3. The IAR insists that the Plaintiff presents no "evidence as to any perceived and direct wrongdoing [by IAR] other than general conspiratorial notions or connections[.]" *Id.*, p. 5. More specifically, the IAR argues that the Plaintiff's own evidence–meaning Plaintiff's Exhibit 5, which is included as an exhibit with the proposed Second Amended Complaint–proves the futility of the amendment as to this claim and this Defendant. *Id.*, p. 2. Exhibit 5 is a newsletter

---

[4] The NAR also seeks dismissal of the current First Amended Complaint pursuant to Federal Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue. These arguments are based, to a great extent, on the assumption that the Plaintiff's current complaint and proposed amended complaint fail to state valid federal claims. Given the Court's conclusion to the contrary, the NAR's jurisdictional arguments will have to be presented anew in a subsequent motion should the NAR deem it appropriate.

written by Kelly Shonborn, who is identified as "IAR Staff Counsel." Plaintiff's Exh. 5, ECF 43-1. The newsletter is titled "focus on: Legal Affairs" and includes a few paragraphs addressing "Employer-Assisted Housing Benefit Plan[s]." *Id*. Those paragraphs quite clearly question the efficacy, and imply the possible illegality, of the Plaintiff's housing assistance program, expressly naming "Data Research & Handling, Inc." *Id*. The newsletter offers a *caveat emptor* of sorts to potential home buyers "to be aware of this program and be sure to ask questions of the administrator if you are asked to participate in a transaction involving" the Data Research Plan. *Id*.

The IAR argues that Exhibit 5 actually *disproves* the Plaintiff's defamation claims (again, against the IAR only). First, the Defendant notes that "[t]he exhibit demonstrates on its face that the publication occurred in May 2011[]" and that "[t]his Court can legitimately question why this article, which should have been well-known for some time, was just now produced." IAR Response, p. 2. The fact that Data Research did not attach a copy of this newsletter to the First Amended Complaint, according to the IAR, demonstrates that the Plaintiff was dilatory and therefore the motion to amend should be denied. *Id*. Next, the IAR argues that in Indiana claims for defamation are "subject to a two (2) year statute of limitations" and so "[t]he only specific alleged act of defamation is time-barred and should lead to dismissal. . . . [T]he latest proposed amended pleading would not change that and should help the Court in making a determination that the amended pleading would be futile." *Id*., p. 5. So, in summary, the IAR argues that the Plaintiff's defamation claims, as against the IAR, fail as a matter of law because there is no evidence that the IAR made any defamatory communications regarding the Plaintiff and the publication of the allegedly defamatory newsletter was published more than two years before the

filing of the First Amended Complaint (which was the first one naming the IAR as a defendant) and so it would be futile to allow Data Research to file the proposed amended complaint.

The Court rejects the IAR's arguments. First, as to the statute of limitations, the IAR concedes in its brief that "[u]nder Indiana law, the statue of limitations begins when the 'damage of the statement is susceptible of ascertainment' rather than when the statement was published." *Id*. (quoting *Wehling v. Citizens National Bank*, 586 N.E.2d 840, 842 (Ind. 1992)). The IAR then concludes that "[t]here is no support for any argument that the publication made by the IAR, whom Plaintiff believes to be a leader and spokesman [sic] of the industry, would not have been easily located promptly upon its publication." *Id*. Stated differently, the IAR contends that Data Research knew or should have known about the publication of the newsletter in 2011 but didn't file a complaint alleging defamation against the IAR until the filing of the current First Amended Complaint on October 1, 2015, which demonstrates dilatory conduct. And, based on the statute of limitations argument, the IAR contends that another amended complaint would be futile.

Data Research responds to the IAR's argument as follows:

[The newsletter] was distributed by the IAR, [and] was also displayed on its website until sometime in 2016. . . . The May 2011 newsletter corresponds in time to [Upstate Alliance's and] NAR's early 2011 efforts to attack the Plaintiff. It stretches credibility to believe that the closeness of time, and the attack on the same party by all three Defendant groups was a mere coincidence. The strongest inference to be drawn is that all parties colluded and conspired together. . . .

This newsletter, which is published by IAR, by its nature promotes IAR to its members and readers as an authoritative source and reaches precisely the audience which would utilize the services of the Plaintiff. The clear implication of the newsletter contents is that Plaintiff's program appears to go astray of the legal requirements of EAH. . . . There appears to be no legitimate purpose to placing this language in the newsletter, except to cast doubt as to the legitimacy of the Plaintiff's program.

. . .

> These allegations against the Defendants, which must be treated as true for a motion to dismiss, more than adequately identify false and misleading statements necessary to make out a cause of action in this case.

Plaintiff's Response, pp. 6-7 (internal citations to proposed amended complaint omitted). The Court agrees with the Plaintiff that the allegations in the proposed amended complaint are sufficient to state claims for defamation against the Defendants, including the IAR. The IAR believes that the Plaintiff's allegations against it are based on nothing more than "conspiratorial notions." And as the Court stated above, perhaps a more developed evidentiary record will resolve this issue, or perhaps only a jury can. But for present purposes the Plaintiff need only present allegations sufficient "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (*even if doubtful in fact*)." *Twombly*, 550 U.S. at 555 (italics added). Data Research does that in the proposed amended complaint and therefore its defamation claims survive the IAR's challenges and the proposed amendment is not futile as to this claim.

## CONCLUSION

For the reasons discussed above, the Plaintiff's motion to file a Second Amended Complaint (ECF 41) is **GRANTED**. The Clerk of the Court is directed to file and docket the proposed Second Amended Complaint (attached as Exh. 1 to the Plaintiff's motion), together with the supplemental exhibits submitted by the Plaintiff at ECF 42 and ECF 43. The motions to dismiss–ECF 20, ECF 29, and ECF 34–all challenged the First Amended Complaint, which is no longer controlling, and therefore are **DENIED AS MOOT**.

Date: September 30, 2017.

   /s/   William C. Lee   
William C. Lee, Judge
United States District Court
Northern District of Indiana
